IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANDREW KOEHN,

        Plaintiff,

v.                                         Case No. 6:15-cv-01244-JTM-KGG

ANADARKO E&P ONSHORE, LLC;
ANADARKO PETROLEUM CORPORATION;
and EOG RESOURCES, INC.,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on plaintiff Andrew Koehn's Motion to Enforce a Settlement Agreement (Dkt. 16). The motion alleges that Koehn and the two Anadarko defendants (referred to collectively as Anadarko) reached a settlement agreement at a conference on January 13, 2016, and that Anadarko has since breached the agreement. Anadarko agrees the matter was settled at the conference, but argues that Koehn is improperly trying to add new terms to the settlement agreement.

**I. Facts.**

Koehn owns the mineral interest on the subject property, which is described as the East One-Half (E/2) of Section Thirty-Four (34), Township Twenty-seven (27S), Range Thirty-three (33W), of the 6th Principal Meridian in Haskell County, Kansas. Anadarko claims to own an oil and gas lease on the property as to all depths below the base of the Permian-Age Council Grove formation. Koehn filed this action in Haskell County District Court seeking cancellation of the lease based on Anadarko's alleged

breach of a covenant to develop the lease. Defendant removed the action to this court

based on federal diversity jurisdiction under 18 U.S.C. § 1332.

The parties agreed to have a mediated settlement conference on January 13, 2016,

before mediator Robert Schmisseur in Sublette, Kansas. During the mediation, the

parties reached an agreement which was handwritten by the mediator and signed by

both parties.  The was set forth as follows:

SETTLEMENT
Koehn v. Anadarko
U.S. District Ct. 15-1244 JTM

1. Anadarko assigns Koehn lease E/2 34-27-33 Haskell Co to American Warrior Inc (AWI) on a 2 year term partial assignment for oil, gas & other hydrocarbons below depth of 3501.
2. No cash paid.
3. Anadarko retains .075 ORRI.
4. Standard Anadarko term partial assignment including complete right to all data & right to have [personnel] on site.
5. AWI has seismic licenses to shoot 9 sections, including 34-27-33 and touching (where Anadarko has the right).
6. Upon TD of well on E/2 34-27-33 to depth below 3501 - & setting of pipe – AWI earns deep rights controlled by Anadarko on the 9 sections for 5 years. Upon expiration 7* years /same ORRI term/ each producing well holds 40 acres.
* Continuous development clause at end of 2 year has to drill a well every 180 days thereafter. Upon end of drilling program retain 40 acres per completed/producing well.
[Signed by all parties and their attorneys].

As to E/2 34-27-33, dismissed with prejudice as to all claims raised in pleadings on file in this case. Dismissal is as to issue arising prior to 1/13/2016.
[Signed again by all parties and attorneys].

Dkt. 16-3 at 2-3.

Subsequent to the settlement conference, Anadarko sent Koehn a drafted Partial

Term Assignment that would partially assign its lease to AWI. Koehn contends the

2

Assignment "did not fully address the further development of the surrounding sections" and "did not determine the timing of future 3D seismic testing, all of which was addressed in the Settlement Agreement." Dkt. 16-1 at 5. In response, Koehn's attorney sent Anadarko a "Memorandum of Understanding" setting forth six items, including the following. Item three stated in part that American Warrior would have the right to conduct 3-D seismic testing on Section 34-27-33 and on the adjoining 8 sections of land "where Anadarko has the right to do so. If Anadarko does not presently have the right to conduct 3D Seismic operations on said additional 8 sections of land adjoining Section 34-27-33, then it will seek to acquire the necessary permits from such persons or companies having such right,…" In item six, the Memorandum stated in part that "in the event that 3D Seismic indicates drilling on lands for which Anadarko does not hold the right to drill, Anadarko agrees that it will use its best reasonable effort to acquire farm out terms similar to those expressed in the Settlement Agreement with other companies or owners who own the right to drill and explore for oil and gas below the depth of 3501 feet …; AND transfer such farm out agreements to [AWI] upon the same terms and conditions as the Settlement Agreement…." Finally, the sixth term stated that "if any terms are different than expressed in the Settlement Agreement or the Partial Assignment, this memorandum shall be the controlling document."

Koehn contends the Memorandum of Understanding "would clarify the Settlement Agreement." Dkt. 16-1 at 8. He maintains that Anadarko agreed to transfer a license to test all nine sections of land, and that Anadarko breached the agreement because it "has failed to assign the license to 3D seismic shoot the entire nine sections."

*Id.* Koehn argues his right to enforce the agreement "is not limited by what [Anadarko] may or may not own," and "[i]t is neither an undue hardship or an impossibility for [Anadarko] to acquire licenses rights [sic] to the other sections of land to fulfill the terms contained within the Settlement Agreement." Koehn asserts that he "should not suffer any consequences if [Anadarko] does or did not have rights to the land described in the Settlement Agreement," and that Anadarko "should be compelled to acquire such rights" and transfer them to AWI "as was agreed to by the parties in the Settlement Agreement." *Id.* at 9. Koehn contends he is entitled to an order of specific performance and to attorney's fees under K.S.A. § 55-202 for having to bring this motion.

**II. Discussion.**

The trial court has the power to summarily enforce a settlement agreement entered into by the parties while the litigation is pending. *D-J Engineering, Inc. v. 818 Aviation, Inc.*, 2016 WL 3255075, *2 (D. Kan. June 14, 2016). In resolving questions of contract formation and construction of the terms, the court applies state law. "Settlement agreements are a type of contract; therefore, the principles of contract law govern the enforcement and interpretation of such agreements." *Hill v. Hutchinson Care Center,* LLC, 357 P.3d 313 (Table), 2015 WL 5927073, *5 (Kan. Ct. App. 2015) (citation omitted). To form a binding settlement agreement, there must be a meeting of the minds on all of the material terms of the parties' bargain and a manifestation of an intention to be bound by those terms. *Id.* (*citing USD No. 446 v. Sandoval*, 295 Kan. 278, 286 P.3d 542 (2012)). The parties' intent is determined objectively from their outward expressions of assent rather than from an inquiry into their subjective states of mind.

*Southwest & Assoc., Inc. v. Steven Enterprises*, 32 Kan.App.2d 778, 781, 88 P.3d 1246 (2004). Agreements to execute a contract in the future are generally not binding unless the parties have agreed to all the material terms, but the fact that the parties contemplate the subsequent execution of a formal instrument does not necessarily imply they have not yet bound themselves to an enforceable contract. *See Phillips & Easton Supply Co., Inc. v. Eleanor Int'l, Inc.* 212 Kan. 730, 734-35, 512 P.2d 379 (1973). In the absence of bad faith, fraud, or mutual mistake, neither party is permitted to repudiate a settlement agreement once it is entered. *Krantz v. Univ. of Kansas*, 271 Kan. 234, 21 P.3d 561, 567 (2001)).

When the terms of a settlement agreement are clear, the court must look only to the four corners of that instrument in ascertaining the parties' intent. *CML-KS Blue Valley, LLC v. MJH Venture, LLC,* 358 P.3d 877 (Table), 2015 WL 6111995, *8 (Kan. Ct. App. Oct. 16, 2015) (citations omitted). Unambiguous contracts are enforced according to their plain, general, and common meaning in order to ensure the intentions of the parties are enforced. *Id.* (*citing Johnson County Bank v. Ross*, 28 Kan.App.2d 8, 10, 13 P.23d 351 (2000)).

Both sides agree that a binding settlement agreement was entered into at the mediation on January 13, 2016. The written agreement itself supports that conclusion. Not only is it entitled "Settlement," but it sets forth all of the essential terms of an agreement and was manifestly adopted by the parties as embodying a complete settlement of their dispute. The fact that it may have contemplated the execution of a future document, *i.e.*, a partial assignment from Anadarko to AWI, as part of the

5

performance of the agreement, does not lessen the conclusion that the parties reached a meeting of the minds on all essential terms and manifested their intent to be bound by those terms.

The court further concludes that the clear and unambiguous terms of the writing refute Koehn's claim that Anadarko breached the agreement. Koehn's assertion that Anadarko guaranteed or promised to provide AWI with a license to take 3-D seismic readings on the entirety of the nine sections, including in areas where Anadarko did not have such rights, is contradicted by the plain language of the agreement. It stated clearly that AWI would have a license to shoot 3-D seismic on the nine sections "where Anadarko has the right." That language cannot reasonably be construed as a promise by Anadarko to obtain a license for AWI in areas where Anadarko did not have rights to conduct 3-D seismic surveys, and in fact it is contrary to such a promise, as the language made clear that the extent of the license was limited to areas where Anadarko held rights.

Koehn concedes in his reply brief that paragraph six of the settlement agreement "clearly limits the possibility of earning additional deep rights to the area of land that is actually controlled by Anadarko," but argues that paragraph five somehow indicates a contrary intent. This argument, which ignores the plain import of the limitation in paragraph five, is simply contrary to the agreement that the parties entered on January 13, 2016. The argument that Anadarko "should be compelled to acquire" lease and exploration rights it did not have when the settlement was signed amounts to an attempt to add new terms that were not a part of the parties' settlement agreement.

6

Kansas law favors the compromise and settlement of disputes. *Krantz*, 271 Kan. at 241-42. The agreement entered into by the parties in this case constitutes an enforceable compromise of their dispute. Plaintiff has shown no breach of that agreement by Anadarko and is not entitled to an order of specific performance or an award of attorney's fees.

Inasmuch as the parties' agreement appears to call for dismissal of the action, the court will entertain a properly supported motion for dismissal. This is not intended to prevent the parties from first resolving any concerns about the language of Anadarko's proposed partial assignment, including any clarification consistent with this order, of the license granted AWI.

**IT IS THEREFORE ORDERED** this 21 st day of September, 2016, that plaintiff Andrew Koehn's Motion to Enforce Settlement Agreement (Dkt. 16) is DENIED.  The bench trial previously scheduled for September 27, 2016, is cancelled.

s/   J. Thomas Marten
J. THOMAS MARTEN, Judge